[No. 20728. Department Two. December 22, 1927.]

JOHN MANOS, *Appellant,* v. THE CITY OF SEATTLE *et al.,*
*Respondents.*[1]

[1] MUNICIPAL CORPORATIONS (325)—LICENSES AND PERMITS—DANCE
HALLS—VALIDITY OF ORDINANCE. The right to maintain a place
as a skating rink does not entitle the owner to a license to
use it as a dance hall, merely because both are included in the
enumeration of amusement places which may be licensed,
where the license ordinances require separate licenses for the
conduct of the several occupations enumerated and each is
separate and distinct and intended to stand upon its own
bottom.

[2] CONSTITUTIONAL LAW (116)—EQUAL PROTECTION OF LAWS—
REGULATION OF BUSINESS—DANCE HALLS. An ordinance pro-
hibiting dance halls within certain areas, except such as were
in lawful operation at the time the ordinance went into effect,
is not objectionable as discriminatory.

[3] SAME (116). An ordinance prohibiting dance halls within
certain areas, except when conducted under the jurisdiction of
certain named boards, is not objectionable as discriminatory.

[4] SAME (116). The fact of discrimination and maladministra-
tion, on the part of officers whose duty it was to enforce an
ordinance prohibiting dance halls within certain areas, does not
render the ordinance void as discriminatory.

Appeal from a judgment of the superior court for
King county, Hall, J., entered December 31, 1926, upon
findings in favor of the defendants, in an action for
injunctive relief. Affirmed.

*Van C. Griffin,* for appellant.

*Thomas J. L. Kennedy, Ray Dumett,* and *A. C. Van
Soelen,* for respondents.

FULLERTON, J.—The appellant, Manos, applied to the
city council of the city of Seattle for a license per-
mitting him to open up, conduct and maintain a dance
hall on real property owned by him, located within the

[1]Reported in 262 Pac. 965.

corporate limits of the city. The property is within five hundred feet of the property line of one of the city's public parks, and for that reason a license was refused him. The present action was instituted by him to compel the issuance of such a license, and, from an adverse judgment, he appeals.

Section 27 of the license code of the city of Seattle provides:

"It shall be unlawful to construct, erect, locate, open up, or maintain any moving picture theatre, or any structure for the exhibition of moving pictures, or to run, operate, exhibit, or display any motion pictures, or any exhibition or shows of which a moving picture is a part, within five hundred (500) feet of the property line of any public school grounds within the City of Seattle, or to construct, erect, locate, open up, or maintain any dance hall, merry-go-round, ferris wheel, carnival, or similar amusement within any public park, school, or playground, or within five hundred (500) feet of the property line of any such park, school, or playground; provided, that nothing herein contained shall be construed to prohibit the continued operation of existing moving picture shows, or theatres, or other amusements herein named, which are, at the time of the passage of this ordinance, in actual operation, so long as such operation is not at any time suspended for a longer period of time than thirty (30) days; and provided, further, that the provisions hereof shall not be construed as prohibiting the maintenance, operation, or giving of any of the amusements herein named by and under the jurisdiction and control of the Board of School Directors, or the Board of Park Commissioners." Ordinance No. 48022, § 27.

The zoning ordinance No. 46,400 of the city provides:

"Section 5. . . .

"(e) No moving picture theater, or any structure for the exhibition of moving pictures, shall be permitted within five hundred feet of the property line of any public school grounds, nor shall any dance hall, merry-go-round, ferris-wheel, carnival or similar amusement be permitted within any public park, school

ground or playground, or within five hundred feet of the property line of any such park, school or playground.''

"Section 9. . . .

"(b) Subject to the provisions of paragraphs (a) and (f) of this section, the lawful use of a building or premises existing at the time of the adoption of this ordinance but not conforming to the provisions for the use district within which it is located may continue, provided that no structural alterations are made except such as the Superintendent of Buildings shall deem necessary for the safety of the building. The combined cost of all alterations and repairs in any ten year period shall not exceed the assessed valuation of the building at the time the last allowable permit is applied for.''

In this court, the appellant makes three principal contentions: First, that he is entitled to a license under the terms of the ordinances; second, that the ordinances violate both the state and the Federal constitutions; and, third, that the question involved is *res judicata*.

[1] To an understanding of the first of the contentions, some additional facts are necessary. The building upon the property now owned by the appellant was erected in 1918 or 1919. Its then owner conducted a public dance hall therein for a short period of time after its erection. It was then changed into a box factory, for which purpose it was used, until the appellant purchased the property in 1924. The appellant converted the building into a public skating rink and was so using it, under a license from the city authorities, when he applied for a license to conduct therein a public dance hall. Under the terms of the ordinances, it will be seen, the appellant was, at the time of his application, entitled to use the property for a public skating rink, and his argument seems to be that, since the ordinances place skating rinks and dance halls in the same general class, and since the city au-

thorities are obligated to issue a license to him for the one purpose, they are equally obligated to issue one to him for the other.

But we cannot concede that the argument is well founded. The enumeration of the several different occupations or amusements in the ordinances was only a convenient means of designating those which were intended to come within their operation. It does not mean that all of them are to be regarded as of the same class, and much less does it mean that a right to a license to conduct one of them gives a right to a license to conduct another. This is evidenced by the fact that separate licenses are necessary for the conduct of each of the several occupations enumerated, whereas, it would seem that, if they were regarded as one and the same, only one general license would have been required for the whole. But the proposition can hardly be made clearer by argument. It is intended by the ordinance that each of the enumerated occupations and amusements shall stand on its own bottom. Each is separate and distinct in itself, and before an individual may have a license to conduct one of them, he must show a right to conduct that particular one; a right to conduct another is not sufficient.

[2] The claim that the ordinances are violative of constitutional prohibitions is founded on the contention that they are discriminatory. They permit, it will be observed, the continued operation of such dance halls as are lawfully conducted at the time the ordinances go into effect, and permit dances to be conducted within the prohibited areas, when conducted under the jurisdiction and control of certain named boards. But it is not our opinion that either of these exceptions renders the ordinances invalid. The first was obviously intended as a relief for those actually engaged in the business the ordinances prohibit. They had invest-

ments therein, made when the business was lawful, and to cut them off arbitrarily could result in serious monetary losses. It must be remembered, furthermore, that the ordinances do not permit the perpetual existence of dance halls within the prescribed area. In time, more or less prolonged, all will be eliminated. It seems clear, therefore, that those actually engaged in the forbidden businesses stand on a different plane than do those who desire to commence the business anew. The parties are not in the same situation. There is thus a distinction as to class, and where there is such a distinction, the law-making body may classify, and may grant privileges to one class which it denies to another. It is needless to collect the cases on the general principle involved. The principle is uniformly recognized, although it may be hard in some instances to recognize a difference between the cases where it is held that the facts do and do not warrant an application of the principle. As a case bearing upon the direct question, see *Laurelle v. Bush,* 17 Cal. App. 409, 119 Pac. 953.

As to the second of the objections, it is at once apparent that there is a wide distinction, also, between dances conducted in a public dance hall, where the sole qualification for admittance is the payment of an admittance fee, and a dance conducted under the supervision of a board, where persons of an objectionable character can be excluded. The objection is not to dancing in and of itself. Dancing conducted in private homes, and in more public places, when properly supervised, is an innocent and wholesome recreation and amusement, but public dance halls, especially in populous cities, have long been recognized as an influence detrimental to the public welfare. They are the favorite resorts of the vicious and immoral, and are the favored working places of that most vile of all humanity, the procurer. There being such a distinc-

tion, it was within the power of the city council to classify them and allow privileges to the one which it denied to the other. A case in point is *State v. Loomis,* 75 Mont. 88, 242 Pac. 344. There, the statute prohibited the keeping open of any dance hall on the first day of the week, excepting, however, from its operation dance halls conducted in public parks. Holding that the exception made did not render the ordinance void, the court said:

"It is contended, further, that by the proviso found in the amended Act an arbitrary distinction is drawn between subjects of the same class, in this: That a dancing hall or pavilion in a public park or playground is permitted to open and operate on Sunday, whereas a dance-house or dance-hall located outside of a public park or playground is required to close on that day. If it be assumed that a dancing hall or pavilion in a public park or playground of necessity belongs to the same class as a dance-house or dance-hall located outside of a public park or playground, defendant might be in a position to complain. On the other hand, if we assume the existence of two distinct classes, defendant cannot insist that the same regulations must apply to each. . . . The right of the state to regulate dance-houses or dance-halls cannot be questioned (Freund on Police Power, sec. 250), and, for the same reasons which justified the legislation above, the state may prescribe the territorial limits within which dance-houses or dance-halls may be opened on Sunday. The amended Act does not discriminate between subjects of the same class, but does create two distinct classes, based upon location (*Bacon v. Walker,* 204 U. S. 311, 51 L. Ed. 499, 27 Sup. Ct. Rep. 289), and it is not inconceivable that the legislature had before it ample evidence to justify the distinction made. . . ."

Less directly in point on the facts, but illustrative of the views of the highest Federal court on the Federal question involved, is *Rast v. Van Deman & Lewis Co.,* 240 U. S. 342. There it appears that a statute of

Florida imposed a license tax upon merchants engaged in certain lines of business. It contained a proviso to the effect that any merchant engaged in the same line of business who offered, with purchases of merchandise, any coupon, profit-sharing certificate, or other evidence of indebtedness or liability redeemable in premiums, should be subjected to an increased tax. The contention was that the act was discriminatory. The court held that it was not, using this language in the course of the argument:

"The ground of discrimination, simply and separated from the other attacks upon the statute, does not present much difficulty. The difference between a business where coupons are used, even regarding their use as a means of advertising, and a business where they are not used, is pronounced. Complainants are at pains to display it. The legislation which regards the difference is not arbitrary within the rulings of the cases. It is established that a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed. *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S. 61, 78. It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength. It is not within the competency of the courts to arbitrate in such contrariety. *Chi. Burl. & Quincy R. R. v. McGuire,* 219 U. S. 549; *German Alliance Ins. Co. v. Kansas,* 233 U. S. 389, 413, 414; *Price v. Illinois,* 238 U. S. 446, 452."

In the recent case of *State ex rel. Seattle Title Trust Co. v. Roberge,* 144 Wash. 74, 256 Pac. 781, we sustained the validity of the zoning ordinance, quoted from in the earlier part of this opinion. It is true, that no stress was laid on this particular part of the ordinance in the opinion of the court, but concerning classification in general it was said that,

"If the question as to whether the classification was proper or not was one upon which there might fairly be a difference of opinion, still we would not be justified in setting it aside."

It is argued in this connection that the administration of the ordinance has been discriminatory. There was evidence introduced tending to show that the city had issued licenses for dance halls within the prohibited area, and that the board of park commissioners had issued a license granting the privilege of conducting a public dance hall in one of the public parks. While we are not convinced that the evidence conclusively establishes the facts to which it was directed, but were we to concede that it did so, we could not conclude that it avoided the ordinance. The ordinance itself does not permit of discrimination between persons, on the part of the officers whose duty it is to enforce it, and the remedy for its maladministration, on their part, is not to declare the ordinance void. Few laws would have force or effect, if their validity depended upon the question whether they were always impartially administered.

The third, and final, of the contentions requires no extended consideration. The appellant was, at one time, refused a license for the operation of a skating rink on the property in question, and it was held, in an action brought to require the issuance of such a license, that he was entitled to it; but, manifestly, if the conclusion reached in the earlier part of this opinion be sound, this is not an adjudication of his right to conduct a dance hall at the same place.

The judgment appealed from is affirmed.

MACKINTOSH, C. J., ASKREN, MAIN, and HOLCOMB, JJ., concur.