THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THE HIBERNIAN BANKING ASSOCIATION, Plaintiff in Error.

*Opinion filed June 29, 1910.*

1. COURTS—*municipal court of Chicago is not part of judicial department of State at large.* The municipal court of the city of Chicago, while it comes under the generic name of "city court," belongs to a specific class different from the city courts established under the general City Courts act, and is created, not as a part of the judicial department of the State at large, but as a local court of the city, for administering the law within the city.

2. CONSTITUTIONAL LAW—*when law is local or special.* A law is necessarily local or special if the right to sue out a writ of error on a judgment for taxes recovered in one court of record shall be allowed, and on a precisely similar judgment recovered in another court of record under same circumstances shall be denied.

3. APPEALS AND ERRORS—*practice in suing out writs of error to municipal court is the same as in other courts.* Under section 29 of article 6 of the constitution, the practice in suing out writs of error from the Supreme Court or Appellate Court to the municipal court of Chicago must be the same as in cases of writs of error to other courts, and in so far as section 23 of the Municipal Court act attempts to prescribe a different rule it is unconstitutional.

4. TAXES—*it is the duty of personal representative to list property for taxation.* Under the statute it is the duty of an executor or administrator to list for taxation property of the estate in his possession, and upon a failure to do so it is the duty of the assessor to ascertain, as best he can, the amount of such property and assess the same.

5. SAME—*a personal representative is personally liable for tax.* By virtue of the statute making it the duty of an executor or administrator to list for taxation property of the estate in his hands

and giving him a lien for taxes paid, there is a personal liability on the part of such executor or administrator to pay such taxes.

6. SAME—*People not obliged to proceed in probate court to recover taxes.* The People are not obliged to proceed in the probate court in order to collect taxes due upon property of the estate assessed while it was in the hands of the executor or administrator but may bring an action of debt against such executor or administrator.

7. SAME—*proceeding by People to recover taxes is not barred by Statute of Limitations.* An action of debt by the People to recover taxes assessed against the defendant is not an action to recover a penalty and is not subject to the Statute of Limitations.

8. SAME—*fact that property is assessed too high is no defense to action of debt for taxes.* If an executor fails to list for taxation the funds of the estate in his hands, the fact that the amount of money actually in his possession as executor on April 1 is less than the amount set down by the assessor in an honest attempt to make a fair assessment is no defense to an action of debt to recover the taxes.

9. SAME—*what amounts to an assessment against the executor.* An assessment entered on the assessor's book as "Sullivan, Daniel, Est. $40,000," with the words "Hibernian Banking Association Extr." in smaller letters immediately above, is a sufficient assessment to the executor, whether it is indexed under the letter "S" or the letter "H."

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding.

BOYLE, MOTT & HAIGHT, and E. R. McFADDEN, for plaintiff in error.

HARRY A. LEWIS, County Attorney, and LOUIS J. BEHAN, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

In an action in the municipal court of Chicago under section 230 of the Revenue act (Hurd's Stat. 1908, p. 1789,) the People recovered a judgment against the Hibernian Banking Association for taxes for 1906, amounting

to $526.16, and this writ of error is brought to review the judgment.

It is suggested by counsel for the defendant in error that the writ was erroneously sued out of this court because section 23 of the Municipal Court act, (Hurd's Stat. 1908, p. 673,) which authorizes a review of the judgments of the municipal court by writ of error, directs that such writ shall be sued out of this court only in cases involving a franchise or freehold, the validity of a statute or the construction of the constitution, and requires such writ in all other cases to be sued out of the Appellate Court. Section 91 of the Practice act allows writs of error from the Appellate or Supreme Court to all courts to which writs of error may be allowed by law, and section 118 requires that such writs of error to circuit courts, the superior court of Cook county, the criminal court of Cook county, county courts and city courts, in all cases relating to revenue, shall be taken directly to the Supreme Court. This case relates to revenue and the municipal court of Chicago is a city court. (*People* v. *Olson, ante,* p. 288; *Hosking* v. *Southern Pacific Co.* 243 Ill. 320; *Miller* v. *People,* 230 id. 65.) We have held that under section 29 of article 6 of the constitution the practice in regard to suing out writs of error from the Supreme Court or the Appellate Court to the municipal court of Chicago must be the same as in the case of writs of error to other courts, and that section 23 of the Municipal Court act, so far as it attempts to prescribe a different rule for writs of error to the municipal court, is unconstitutional. (*Clowry* v. *Holmes,* 238 Ill. 577.) The constitutional provision which requires all laws relating to courts to be of uniform operation, requires that they shall operate uniformly on all similar cases in the particular court. To this is added the further requirement that the organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade, so far as regulated by law, and the force and effect of the process, judgments

and decrees of such courts, severally, shall be uniform. By the amendment to the constitution which is now section 34 of article 4, the legislature is relieved from the limitation last mentioned, so far as any municipal court which it may create in the city of Chicago is concerned. Such court, while it comes under the generic name of "city court," belongs to a specific class different from the city courts established under the general City Court act, and is created, not as a part of the judicial department of the State at large, but as a local court of the city, for the purpose of administering the law within the city. (*Miller* v. *People, supra.*) The amendment of the constitution authorized the local and special law whereby the municipal court was created and was placed in a class by itself. While the legislature may provide for the review of the judgments of the municipal court by appeal or writ of error, in its discretion, yet all laws relating to other courts must be of uniform operation, and a law cannot be made to affect the uniformity of the jurisdiction or practice of this court, so as to make it local or special or to make it operate differently under similar conditions. The law not only is not of uniform operation so far as the jurisdiction of this court is concerned, but also is necessarily local and special if the right to sue out a writ of error on a judgment for taxes recovered in one court of record shall be allowed and on a precisely similar judgment recovered in another court of record under the same circumstances shall be denied.

The case was tried by the court without a jury upon an agreed statement of facts substantially as follows: The Hibernian Banking Association was administrator of the estate of Daniel Sullivan, and had on February 1, 1906, the sum of $39,298.59 assets of the estate. During February it distributed $22,297 to the heirs of Daniel Sullivan, and on June 11, 1906, after giving notice of final settlement of the estate, it filed a final report, the estate was declared settled and it was discharged. In the meantime the

county assessor had entered personal property for taxation on the assessor's book by writing in book 11, on page 10, of South Chicago, First ward, personal property, under index "S," on the line used for listing property, the words "Sullivan, Daniel, Est.," and opposite thereto, as the property listed for taxation, the amount of $40,000, and immediately above and beyond the entry of the estate of Daniel Sullivan was written in smaller letters, "Hibernian Banking Association, Extr.," so that the entry appeared as follows:

Hibernian Banking Association, Extr.
Sullivan, Daniel, Est................................$40,000

The amount of the taxes was not determined until the fall of 1906, and they were not payable nor were the tax books delivered to the collector until December, 1906. The amount of money the plaintiff in error held as assets of the estate on April 1, 1906, was $17,001.59. The taxes on the $40,000 listed amounted to $526.16 and were never paid.

Paragraph 6 of section 6 of the Revenue act requires the personal property of the estate of a deceased person to be listed by the executor or administrator, and section 19 requires it to be listed ·in the same place in which the executor or administrator is required to list his own property, but separately, specifying the estate to which it belongs. It was the duty of the plaintiff in error to list for taxation the personal property of the estate in its possession on April 1, 1906, and upon its failure to do so it became the duty of the assessor to ascertain the amount and value of such property and assess the same as he believed to be the fair amount and value thereof. (Hurd's Stat. 1908, sec. 83, p. 1752.) Section 256 of the Revenue act gives to every person to whom, as agent or in a representative capacity, property is assessed, a lien for the taxes upon such property and all property of the principal in the possession of the person so assessed. By virtue of the duty to list for taxation and the lien given for the amount of the taxes,

we have held that there exists a personal liability on the part of agents and others acting in a representative capacity for the payment of the taxes upon the property of others in the possession of such agents or representatives. *Scott* v. *People,* 210 Ill. 594; *Walton* v. *Westwood,* 73 id. 125; *Lockwood* v. *Johnson,* 106 id. 334.

It is contended that no judgment can be rendered against the Hibernian Banking Association because the property was not assessed to it as administrator but was assessed to the estate of Daniel Sullivan in the book of persons to be taxed whose names began with "S," the name of the Hibernian Banking Association appearing only in a notation above the entry, noting that the Hibernian Banking Association was executor. We do not assent to this position. The entry constituting the assessment includes all the words, and it means the same thing whether read "Hibernian Banking Association, Extr. Sullivan, Daniel, Est.," or "Sullivan, Daniel, Est., Hibernian Banking Association, Extr." In either case it means, as read in the assessor's book, "Property of the estate of Daniel Sullivan, a deceased person, in the possession of his executor, the Hibernian Banking Association," and this is an assessment to the executor. The validity of the assessment is not affected by the fact that it was improperly indexed and included in the book of persons to be taxed whose names began with "S," instead of "H" or "B" or "A." The officers of the plaintiff in error are presumed to have known that the plaintiff in error should have listed the property of the estate of Daniel Sullivan for taxation, and not having done so, that it would be assessed by the assessor without such list. If they had desired to examine the tax books they could have found the assessment without serious difficulty, either among the names beginning with "S" or those beginning with "H." Clerks might differ as to which letter it should be more appropriately placed under. Either would enable anyone to find it who desired to, and when

found it would have appeared as an assessment against the Hibernian Banking Association, as executor of Daniel Sullivan.

It is insisted that the property on which the taxes were levied was not owned by or in the possession or under the control of the person against whom the taxes were assessed, and in this connection attention is called to the fact that the property was in the form of money, that it amounted to less than one-half of the assessment and that there was no opportunity for valuation. It is true that an assessment of personal property against one who was not, on the first day of April in the year for which the assessment was made, the owner of the property or interested in it and had not possession or control of it is without authority of law. But this is not such a case. The plaintiff in error had property which it was its duty to list. It did not do so, and as required by the statute the assessor assessed it according to his judgment of the fair amount and value thereof. There is no claim that the assessment was fraudulent, that there was not a fair exercise of judgment, or that the valuation arrived at was not justified by the means of knowledge at hand. Plaintiff in error having failed to furnish the information necessary to a correct assessment, the records of the probate court could be availed of as well as such other sources of information as existed. The valuation of property for taxation is not, in the absence of fraud, subject to the supervision of the courts. (*Keokuk and Hamilton Bridge Co.* v. *People,* 185 Ill. 276; *Burton Stock Car Co.* v. *Traeger,* 187 id. 9.) Mere over-valuation is not sufficient to establish fraud. (*People* v. *Bourne,* 242 Ill. 61.) Circumstances in connection with the over-valuation may be sufficient to establish the fraudulent character of an assessment. (*Chicago, Burlington and Quincy Railroad Co.* v. *Cole,* 75 Ill. 591; *State Board of Equalization* v. *People,* 191 id. 528.) In this case, however, nothing has been

shown as to the valuation except that the assessment exceeds the amount which was in the possession of the plaintiff in error on the first day of April.

The case of *Keokuk and Hamilton Bridge Co.* v. *People,* 161 Ill. 132, is cited by the plaintiff in error but it has no bearing on this question. In that case the bridge which was assessed extended into the State of Iowa, and the assessor included in his assessment a part of the bridge which was beyond the boundaries of this State, and which there was, therefore, no authority to assess for taxation in this State. It was held that the effect of including its value in the assessment was to render the assessment invalid. The assessment in this case was lawfully made by the proper authority and at the proper time. The property was rightly assessed to the plaintiff in error. Having failed to avail itself of the remedy provided by law for an overvaluation in the assessment it cannot now successfully resist the payment of the tax.

To the contention that the defendant in error should have collected the tax by proceeding in the probate court, it is sufficient answer to say that if the defendant in error might have proceeded in the probate court the statute has also given this remedy by an action of debt.

The plaintiff in error contends that this is an action for a statutory penalty, and is therefore barred by the Statute of Limitations because not brought within two years after it accrued. The suit is brought to recover taxes assessed against the plaintiff in error and not for a penalty, and being brought by the People is not subject to the Statute of Limitations.

The judgment will be affirmed.  *Judgment affirmed.*