BLACKMARR v. CITY COURT OF SALT LAKE CITY et al.

No. 5025.  Decided December 7, 1934.  (38 P. [2d] 725.)

For opinion on rehearing see 86 U. 569, 46 P. (2d) 1118.

*Beverly S. Clendenin* and *G. M. Sullivan,* both of Salt Lake City, for appellant.

*Dan B. Shields,* of Salt Lake City, for respondent.

ELIAS HANSEN, Justice.

The sole question presented in this case is the constitutionality of Comp. Laws Utah 1917, § 3287, which provides:

"Every society, whether domestic or foreign, now transacting business in this state, within ninety days after the passage of this chapter, and every such society hereafter applying for admission, shall before being licensed, appoint in writing the commissioner of insurance and his successors in office to be its true and lawful attorney, upon whom all legal process in any action or proceeding against it shall be served, and in such writing shall agree that any lawful process against it which is served upon such attorney shall be of the same legal force and validity as if served upon the society and that the authority shall continue in force so long as any liability remains outstanding in this state. Copies of such appointment, certified by said commissioner of insurance, shall be deemed sufficient evidence thereof and shall be admitted in evidence with the same force and effect as the original thereof might be admitted. Service shall only be made upon such attorney, must be made in duplicate upon the commissioner of insurance or in his absence upon the person in charge of his office, and shall be deemed sufficient service upon such society; provided, however, that no such service shall be valid or binding against any such society when it is required thereunder to file its answer, pleading, or defense in less than thirty days from the date of mailing the copy of such service to such society. When legal process against any such society is served upon said commissioner of insurance he shall forthwith forward by registered mail one of the duplicate copies prepaid and directed to its secretary or corresponding officer. Legal process shall not be served upon any such society except in the manner provided herein."

Plaintiff claims that the foregoing statute is inhibited by subdivision 6 and a part of subdivision 18, § 26, art. 6, of our state Constitution, which provide:

"The Legislature is prohibited from enacting any private or special laws in the following cases: * * *

"6. Regulating the practice of courts of justice. * * *

"18. * * * In all cases where a general law can be applicable, no special law shall be enacted."

The particulars wherein it is urged that section 3287 above quoted is private or special within the meaning of the Constitution are that such section grants to fraternal benefit societies "thirty days from the date of mailing the copy of such service to such society," in which to plead to an action brought against it in a city court, while other de-

fendants in an action brought in a city court must appear and plead within ten days if served within the county in which the action is brought, otherwise within twenty days after being served with summons. Section 1714, Comp. Laws Utah 1917, as amended by Laws Utah 1919, c. 34, pp. 61 and 62. Also that the act is unconstitutional because it provides that, in case of service upon a fraternal benefit society, service of summons shall be made in "duplicate," while in case of service of summons upon any other defendant only one copy of the summons need be left with the defendant served.

The case is brought to this court in the manner following: Plaintiff in this proceeding brought an action in the city court of Salt Lake City, Utah, against the Woodmen of the World, a corporation. The action, consisting of two causes, was to recover for extra assessments which plaintiff alleged he and his assignor paid to the defendant under protest. Plaintiff further alleged that the assessments sued for were collected wrongfully, unlawfully, and in violation of an injunction issued by the district court of Denver, Colo.

After the action was commenced by filing the complaint, summons was issued, and service thereof was had upon E. B. Heagren, cashier and agent of defendant corporation, and also upon J. G. McQuarrie, state insurance commissioner of Utah. In each instance the sheriff's return shows that service was had by leaving a copy of the summons and a copy of the complaint with the person served. The summonses so served directed the defendant to appear within 10 days after service, if served within the county in which the action was brought, otherwise within 20 days after such service. The summonses were served in Salt Lake county on August 23d. On September 4th following, default of the defendant was entered for its failure to answer or otherwise plead to the complaint within the time specified in the summons. On the day following the entry of the default of the defendant, that is, September 5th, a default judgment was entered in favor of the plaintiff and against the de-

fendant. On September 14th following, notice was served upon counsel for plaintiff informing him that on September 23d defendant would move the city court of Salt Lake City to "set aside the judgment entered against it in favor of the plaintiff * * * for the reason that the said judgment is taken illegally and said attempted service is not made in compliance with the laws of Utah." The city court granted the motion to vacate the judgment rendered against the defendant for the reason that the service of summons in the cause was not had as provided by law. Thereupon plaintiff sued out a writ of certiorari in the district court of Salt Lake county. The writ was denied by that court, and plaintiff prosecutes this appeal from the order denying the writ.

It will be noted from the facts recited that the city court judgment was entered in less than 30 days from the date that the state insurance commissioner mailed to the defendant a copy of the summons served upon him. In fact there is nothing in the record which is brought here for review which shows that the insurance commissioner ever mailed a copy of the summons to the defendant. It will also be noted that the sheriff's return fails to show that summons was served in duplicate upon the state insurance commissioner. Thus, if section 3287, Comp. Laws Utah 1917, is constitutional, admittedly the action of the city court in vacating the judgment rendered in favor of plaintiff and against the Woodmen of the World was proper. There is no question raised as to a proceeding for a writ of certiorari being the proper remedy to test the matter which divides the parties. Therefore we shall dispose of the cause by determining whether section 3287, supra, is or is not unconstitutional. In support of plaintiff's claim that the section is unconstitutional, the following cases are cited: *State ex rel. Ramsey, County Attorney,* v. *Deming,* 98 Kan. 420, 158 P. 34; *McClain* v. *Williams,* 11 S. D. 60, 75 N. W. 391; *People* v. *Budd,* 24 Cal. App. 176, 140 P. 714; *Bear Lake County* v. *Budge,* 9 Idaho 703, 75 P. 614, 108 Am. St. Rep. 179; *Gulf, Colo. & Santa Fe Ry. Co.* v. *Ellis,* 165 U. S. 150,

17 S. Ct. 255, 41 L. Ed. 666; *Board of Education of Ogden City* v. *Hunter*, 48 Utah 373, 159 P. 1019, 1024. Counsel for plaintiff also call our attention to the following cases: *People* v. *Hibernian Banking Ass'n*, 245 Ill. 522, 92 N. E. 305; *Wallace* v. *Leiter*, 76 Ohio St. 185, 81 N. E. 187; *City of Tulare* v. *Hevren*, 126 Cal. 226, 58 P. 530; *People* v. *Cosmopolitan Fire Ins. Co.*, 246 Ill. 442, 92 N. E. 922; *O'Connell* v. *Menominee Bay Shore Lumber Co.*, 113 Mich. 124, 71 N. W. 449; *Kaufman* v. *West*, 133 Wash. 192, 233 P. 321; *Fountain Park Co.* v. *Hensler*, 199 Ind. 95, 155 N. E. 465, 50 A. L. R. 1518; *Davis Constr. Co.* v. *Board of Commissioners*, 192 Ind. 144, 132 N. E. 629, 21 A. L. R. 557; *Crisman* v. *State*, 93 Tex. Cr. R. 393, 248 S. W. 343; *Jones* v. *Paxton* (D. C.) 27 F. (2d) 364; *Sorenson* v. *Webb*, 111 Miss. 87, 71 So. 273.

Defendant cites, in support of the claim that the law in question is constitutional, the following cases and authorities: 6 R. C. L. 359, and cases there cited; *State* v. *Condon*, 108 Tenn. 82, 65 S. W. 871; *Union Central Life Ins. Co.* v. *Black*, 67 Utah 268, 247 P. 486, 47 A. L. R. 372; *Pickering* v. *Industrial Comm.*, 59 Utah 35, 201 P. 1029; *Board of Medical Examiners* v. *Blair*, 57 Utah 516, 196 P. 221; *Stillman* v. *Lynch*, 56 Utah 540, 192 P. 272, 278, 12 A. L. R. 552; *State* v. *Garness*, 83 Wash. 699, 144 P. 929; *Union Sulphur Co.* v. *Reed* (D. C.) 249 F. 172; *Hill* v. *Rae*, 52 Mont. 378, 158 P. 826, L. R. A. 1917A, 495, Ann. Cas. 1917E, 210; *In re Opinion of Justices*, 251 Mass. 569, 147 N. E. 681; *City of Louisville* v. *Coulter*, 177 Ky. 242, 197 S. W. 819, L. R. A. 1918A, 811; *People* v. *Jordan*, 172 Cal. 391, 156 P. 451; *Hunsaker* v. *Harris*, 37 Utah 226, 109 P. 1; *Ex parte Stephan*, 170 Cal. 48, 148 P. 196, Ann. Cas. 1916E, 617; *State* v. *Cannon*, 125 Wash. 515, 217 P. 18; *Hawthorn* v. *People*, 109 Ill. 302, 50 Am. Rep. 610; *Vogel* v. *Pekoc*, 157 Ill. 339, 42 N. E. 386, 30 L. R. A. 491; *Cincinnati, H. & D. Ry. Co.* v. *McCullom*, 183 Ind. 556, 109 N. E. 206, Ann. Cas. 1917E, 1165; *Saylor* v. *Duel*, 236 Ill. 429, 86 N. E. 119, 19 L. R. A. (N. S.) 377; *Fawcett* v. *Ball*, 80 Cal. App. 131, 251

P. 679; *Grigsby* v. *King*, 202 Cal. 299, 260 P. 789; *Old Homestead Bakery* v. *Marsh*, 75 Cal. App. 247, 242 P. 749; *State* v. *Richcreek*, 167 Ind. 217, 77 N. E. 1085, 5 L. R. A. (N. S.) 874, 119 Am. St. Rep. 491, 10 Ann. Cas. 899; *Eddington* v. *Union Portland Cement Co.*, 42 Utah 274, 130 P. 243; *John Hancock Mutual Life Ins. Co.* v. *Warren*, 181 U. S. 73, 21 S. Ct. 535, 45 L. Ed. 755; *Ozan Lumber Co.* v. *Bank*, 207 U. S. 251, 28 S. Ct. 89, 52 L. Ed. 195; *State* v. *Fraternal Knights & Ladies*, 35 Wash. 338, 77 P. 500; *Pasadena City High School District of Los Angeles County* v. *Upjohn*, 206 Cal. 775, 276 P. 341, 63 A. L. R. 408; *Yamhill Electric Co.* v. *City of McMinnville*, 130 Or. 309, 274 P. 118, 280 P. 504; *In re Lake*, 89 Cal. App. 390, 265 P. 325; *State* v. *Quigg*, 94 Fla. 1056, 114 So. 859; *Big Wood Canal Co.* v. *Chapman*, 45 Idaho, 380, 263 P. 45; *Manos* v. *City of Seattle*, 146 Wash. 210, 262 P. 965; 12 C. J. 1135; 12 C. J. 113.

That the issuance and service of summons is embraced within the constitutional provision with respect to "the practice of courts of justice" may well be conceded. Such is the effect of the decisions: *Branch* v. *McCormick's Estate*, 72 Or. 608, 143 P. 915, 144 P. 425; *Hoffman* v. *Paradis*, 259 Ill. 111, 102 N. E. 253.

In the main, the authorities cited by the respective parties discuss one or more principles of law somewhat analogous to the question involved in the case in hand, but none of them deal with a state of facts such as are presented in the instant case. The general rules to be applied in testing whether a statute does or does not offend against constitutional provisions prohibiting the enactment of special or private laws are well established, but difficulty is frequently experienced in applying the rules to particular facts. This court, in a number of cases, has had occasion to refer to and apply some of such rules in testing the constitutionality of legislative enactments in cases somewhat analogous to the case now under review. In the case of *Board of Education of Ogden City* v. *Hunter*, supra, it is said:

"While courts do not lightly interfere with the Legislature in choosing or selecting methods of classification, yet they do not, and may not, shut their eyes to classifications that clearly and manifestly operate unequally, unjustly, and unfairly upon those who come within the same class."

In the case of *Stillman* v. *Lynch,* supra, it is said:

"Every presumption is in favor of the constitutionality of a statute, and in case of a doubt the statute must be held to be valid."

In the case of *Eddington* v. *Union Portland Cement Co.,* supra, it was held that our statute which dispenses with a bond on appeal where the appellant is unable to pay the costs on appeal is not unconstitutional as discriminating against litigants. While no constitutional question was raised in the case of *Hunsaker* v. *Harris,* supra, this court in that case held that it was competent for the Legislature to fix a period of ten days in which an appeal may be taken in an action relating to forcible entry and detainer, notwithstanding the fact that under our Code relating to civil actions an appeal may be taken at any time within six months after the entry of judgment. In *State* v. *Packer Corporation,* 77 Utah 500, 297 P. 1013, 1019, the members of this court were divided upon the results that should be reached, but they were all agreed that a "classification, to be valid, 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'"

It will be noted that the section, the provisions of which are here brought in question, is a part of title 52, c. 2, Comp. Laws Utah 1917. In section 3271 a fraternal benefit society is defined as "any corporation, society, order, or voluntary association, without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries, and not for profit, and having a lodge system with ritualistic form of work and representative form of government, and which shall make provision for the payment of benefits in accordance with §

3275." As thus defined, a fraternal benefit society is essentially an eleemosynary organization. It, however, is vested with the right to enter into contracts of insurance against death and disability not unlike contracts for life and accident insurance written by companies organized for profit. The act, of which the section under review is a part, contains comprehensive provisions for the supervision and control of fraternal benefit societies doing business in this state. It was evidently enacted to protect the residents of this state in rights which they might acquire under contracts between them and fraternal benefit societies for the payment of death and disability benefits. It would also seem that one of the purposes of the act was to enable residents of this state who desired death and disability benefits to secure the same at the minimum cost consistent with safety. The act permits corporations, societies, orders, and voluntary associations, both domestic and foreign, which comply with its provisions, to engage in business in this state. Foreign fraternal benefit societies are required to file with the state insurance commissioner a certified copy of their charters or articles of association. The certificate must be made by the proper officer of the home state, province, or country where the society is legally organized. No requirement is made by the act that any officer or process agent of such organization, whether domestic or foreign, shall be a resident of this state other than that all such organizations, whether domestic or foreign, shall "appoint in writing the commissioner of insurance and his successors in office to be its true and lawful attorney, upon whom all legal process in any action or proceeding against it shall be served." The powers and duties of regulating and supervising such organizations are, in a number of particulars, placed by the act on the insurance commissioner. From what has been said, it will be observed that fraternal benefit societies as defined in our statute have characteristics which are common to other legal entities, but that they also have other characteristics peculiar to themselves. While the difference between fraternal benefit so-

cieties and some other forms of entities recognized by law may not be as marked, as for example the difference between a bank and an insurance company, still the Legislature has by the act clearly fixed the characteristics of such societies. We have no serious difficulty in reaching the conclusion that it was competent for the legislative authority to place fraternal benefit societies in a class by themselves. Nor, as we understand plaintiff's position, does he complain because fraternal benefit societies are placed in a separate and distinct class from other legal entities. His complaint is that the Legislature, because of constitutional provision prohibiting the enactment of any private or special law regarding the practice of courts, was without authority to enact a law making the manner of service of summons upon, and the time for answer given to, a fraternal benefit society different from that of other defendants. It will be observed that by the provisions of the act all fraternal benefit societies, whether foreign or domestic, are required to be served in the same manner, and are given the same length of time after service in which to answer. The test of whether or not a given enactment of the Legislature regarding the practice of courts of justice is inhibited by our Constitution must be tested by the same principles that are applied to classifications generally. As "the classification to be valid must rest upon some ground of difference having fair and substantial relation to the object of the legislation," so also must a law to be valid providing for a departure from the general law regulating the service of summons upon a defendant "rest upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced shall be treated alike."

By the provisions of the act now under review, the defendant, being a fraternal benefit society, was precluded from doing any business in this state until it appointed the state insurance commissioner its process agent. The requirement is the same whether the defendant is organized in this state or in some other state of the Union

or in a foreign country. In either event service of summons to be legal must be had upon the state insurance commissioner. It is reasonable to assume that the state insurance commissioner would not, in most instances, be a member of, or have any personal interest in, all of the fraternal benefit societies operating in this state. Obviously a summons served upon him would not, in most instances, advise the defendant society that an action had been commenced against it until he in turn so advised the society. If the defendant society was organized under the laws of another state or foreign country, and there resided its officers, considerable time might be required for the copy of the summons to reach the society after it was mailed as directed by the act. Even in the case of a domestic society, some time would be required for the summons to reach the defendant after it had been served upon the state insurance commissioner. It would therefore seem clear that, so long as the act under review requires fraternal benefit societies to appoint the state insurance commissioner their process agent, there is very good reason, if indeed justice does not require, that such societies have a longer period in which to answer than is allowed when a defendant or its officers are personally served. A defendant served with summons outside of the county where the action is lodged is given a longer time to answer than when served within such county. The law which provides for such discrimination may not be said to offend against the constitutional provision here under review. For similar reasons, a defendant served with summons as provided in the act in question may be given a longer time to answer than in case of personal service without offending against the constitutional provision relied upon by plaintiff in this proceeding. One served with summons has a constitutional right to a reasonable time after service in which to answer an action brought against him. What is a reasonable time may well be affected by the manner as well as by the place of service. So also may it be said that the requirement that two copies of the summons be left with

the state insurance commissioner is not without reason. By the service of two copies of the summons the commissioner may retain one for his own reference and mail the other to the defendant society.

One further question is suggested with respect to the act under review, viz.: Does that provision of the act which requires that all fraternal benefit societies doing business in this state shall appoint the state insurance commissioner their process agent offend against the provision of the Constitution which prohibits the enactment of special or private legislation? That phase of the law is not urged in the briefs of counsel, but would seem to be involved in the matters which are urged. We have heretofore indicated some of the characteristics which are peculiar to fraternal benefit societies as defined in the act. Such an organization may be a corporation, society, an order, or other voluntary association. It must be without capital stock and carried on solely for the mutual benefit of its members and their benficiaries. The act does not require that any officer or other agent of such society be a resident of this state. In the absence of the provision requiring that a fraternal benefit society must appoint the state insurance commissioner its process attorney, it may well be that in a given case no personal service of summons could be had upon such a society. Had the act required that a fraternal benefit society have one or more of its officers or a process agent, other than the state insurance commissioner, a resident of this state, such provision might well add to the cost of maintaining such a society and thus reduce the amount available for death and disability benefits. The requirement that all summonses in actions brought against a fraternal benefit society be served upon the state insurance commissioner would tend to keep him informed concerning the business of such society and thus assist him to better perform his duties with respect to the supervision thereof. Whatever may have prompted the Legislature in enacting the law here questioned, we are of the opinion that it falls within the rule heretofore in-

dicated. We can perceive of no good reason why the rule with respect to the authority of the Legislature to make classifications should not apply to the manner of serving summonses as well as other treatment accorded a particular class. We are less reluctant in reaching this conclusion because the plaintiff herein, and others similarly situated, cannot well sustain any pecuniary loss by reason of the fact that fraternal benefit societies are given 30 days after service of summons in which to plead to actions brought against them while other defendants are required to plead in a somewhat shorter period.

The order dismissing the writ is affirmed. Costs are awarded respondents.

FOLLAND and EPHRAIM HANSON, JJ., concur.

MOFFAT, Justice (dissenting).

The prevailing opinion states the sole question presented by this appeal. The constitutionality of a part of section 3287, Comp. Laws Utah 1917 (sections 43-9-30 and 43-9-31, R. S. Utah 1933, having divided the section as found in the Compiled Laws of 1917), is the question at issue. The part of the section attacked is contained in the proviso of the Comp. Laws Utah 1917 relating to the length of time within which the defendant referred to in the section is required to answer. The facts are set forth at length in the main opinion and need not be repeated here.

Under the general statutes all defendants in the respective courts of justice of this state, be they white or black, native or alien, corporate or otherwise, are required to answer within the same time, the sole exception being "Fraternal Benefit Societies," section 3287, supra (Section 43-9-31, R. S. Utah 1933), being the section which grants to such societies the privilege of a 30-day period before being required to answer. That part of the section granting this special time for answering, in so far as pertinent here, reads:

"Service shall only be made upon such attorney, * * * and shall be deemed sufficient service upon such society; provided, however,

that no such service shall be valid or binding against any such society when it is required thereunder to file its answer, pleading, or defense in less than thirty days from the date of mailing the copy of such service to such society. * * * Legal process shall not be served upon any such society except in the manner provided herein."

If this statute does not violate the provisions of article 6, § 26, subd. 6, and part of subdivision 18, it is difficult to conceive a situation that would be violative of the provisions of the Constitution referred to. The provisions referred to read (article 6, § 26) :

"The Legislature is prohibited from enacting any private or special laws in the following cases: * * *

"6. Regulating the practice of courts of justice.  * *

"18. * * * In all cases where a general law can be applicable, no special law shall be enacted."

It is to be observed that there is a general law relating to the commencement of an action in city courts, district courts, and in courts of justices of the peace. The sections referring to the respective courts as to the manner of commencing an action are:

City courts, section 1714, Comp. Laws Utah 1917, as amended by Laws Utah 1919, c. 34, p. 61:

"The manner of commencing an action in the said city court, the requisites of summons, and the manner of service and return of summons shall, except as otherwise provided in this chapter, conform as nearly as may be to the practice prescribed for district courts; provided, that when the action is commenced by the filing of a complaint a copy of the complaint need not be filed with the clerk of the court, but must be served upon the defendant, at the time of the service of the summons; no extra fee in addition to that allowed for serving the summons shall be allowed the officer for serving this copy. If a copy of the complaint is not served with the summons, the words, 'of which a copy is hereto annexed and is herewith served upon you' may be omitted or erased, and in place thereof may be inserted the words, 'which within five days after service of this summons upon you, will be filed in said court.' If a copy of the complaint be not served with the summons, and a copy thereof be not deposited with the clerk of said court within five days after service of the summons, the copy of the summons served on the defendant

may be filed with the clerk of the court by the defendant, and thereupon the clerk shall docket said action, and the same shall be dismissed by the court, on motion of the defendant, at the cost of plaintiff; provided further, that if the action be upon contract for the payment of money only, the summons shall set out the amount.

"The summons issued out of said court shall be substantially in the following form: Title of court and cause. The State of Utah to said defendant. You are hereby summoned to appear within ten (10) days after the service of this summons upon you, if served within the county in which this action is brought; otherwise within twenty (20) days after this service, and defend the above entitled action; in case of your failure to do so the plaintiff in this action will apply to the court for the relief demanded in the complaint, of which a copy is hereto annexed and herewith served upon you, (and if the action be upon contract for the payment of money only, add substantially the following): and will take judgment against you for the sum of —— dollars ($——), with interest at the rate of —— per cent per annum since the —— day of —— (19——), together with plaintiff's costs and disbursements herein.

"_____

"Plaintiff's Attorney.

"Dated————————, A. D. 19——."

## District courts, sections 6538 and 6539, Comp. Laws Utah 1917:

Section 6538: "A civil action shall be commenced by the filing of a complaint with the clerk of the court in which the action is brought or by the service of a summons."

Section 6539: "The summons in a civil action shall be substantially in the following form:

"In the District Court of ——————— County, State of Utah.

"——————, plaintiff, vs. ———————, defendant.

### Summons.

"The state of Utah to the said defendant:

"You are hereby summoned to appear within twenty days after service of this summons upon you, if served within the county in which this action is brought; otherwise within thirty days after service, and defend the above entitled action; and in case of your failure so to do, judgment will be rendered against you according to the demand of the complaint.

"(Signed by)——————

"Plaintiff (or plaintiff's attorney).

"P. O. Address:———————————

"If the complaint be on file at the time of service of the summons, the words 'which has been filed with the clerk of said court,' shall be added, following the word 'complaint;' otherwise the words, 'which, within ten days after service of this summons upon you, will be filed with the clerk of said court,' shall be added, following the word 'complaint.' When service of the summons is made by publication, the summons shall also contain a brief statement of the object of the action, as, for example: 'This action is brought to recover a judgment—dissolving the marriage contract (or bonds of matrimony) heretofore existing between you and the plaintiff;' or, 'quieting plaintiff's title to the land described in said complaint;' or, 'foreclosing plaintiff's mortgage upon the land (or other property) described in said complaint,' as the case may be."

### Justices' Courts, sections 7435 and 7436, Comp. Laws Utah 1917:

Section 7435: "An action in a justice's court is commenced by filing a complaint. The court must indorse on the complaint the date upon which it was filed, and make an entry of such filing in his docket with the date thereof, and at any time within three months thereafter the plaintiff may have summons issued."

Section 7436: "The summons must be issued and signed by the justice, and shall be substantially in the following form:

"In the Justice's Court, in and for the ——————— precinct, city of ———————, county of ———————, state of Utah.

"Before ———————, Justice of the Peace.

"———————, Plaintiff, vs. ———————, Defendant.

#### Summons.

"The state of Utah to the defendant:

"You are hereby summoned to appear before the above entitled court within ten days after the service of this summons upon you, if served within the county in which this action is brought, otherwise within twenty days after this service, and defend the above entitled action, brought against you to recover (stating in general terms the nature of the cause of action), and in case of your failure to do so, judgment will be rendered against you according to the demand of the complaint.

"———————————————

"Justice of the Peace."

It will be observed that all of the sections relate to the manner of commencing actions in the respective courts and

in each the form of summons is prescribed and the time is fixed within which prescribed time the defendant is required to answer. There is no exception. Every defendant in the particular court in which the action may be commenced is subject to the same law and has the same rights and privileges, and the same duties are imposed.

If it was the intention of the Legislature, assuming without admitting that it had the power, to provide that a particular defendant, or class of defendants, might have more time in which to answer than other defendants, all of the sections of the statutes relating to the manner of commencement of actions should have been amended by inserting an exception such as, "except Fraternal Benefit Societies," otherwise we are driven to the position of amendment of statutes by implication, which may not be done unless the intendment is clear, and even this is not available in the instant case, for the reason that the statute relating to the service of summons on fraternal benefit societies was passed in 1911 (Laws 1911, p. 301), and, although the city courts were created in 1901, the statute prescribing the form of summons and fixing the time within which a defendant must answer was amended and re-enacted in 1919. So, if the last word of the Legislature upon the subject is to be considered as effective, the time for any defendant to answer is as provided by section 1714, as amended by Laws of Utah 1919.

Aside from the constitutionality of the statute attacked, it would seem that, under the ordinary rules applicable to such a case, the last expression of the legislative intent should control and the summons served must comply with the law in force and applicable to the instant case.

When the statutes above quoted are compared it will be observed that in each court every defendant, without exception, in the court in which the action is brought, must answer or plead within the same time. The question is not one of classification of courts, or limitations upon jurisdiction. It is classification, if at all, among defendants. The general

law thus provided, not only can be applicable, but the general law is applicable.

"All laws of a general nature shall have uniform operation." Const. Utah, art. 1, § 24.

This law does not operate uniformly upon all defendants in city courts, or otherwise. The difficult and disturbing situation is that a proviso in a law relating to a particular defendant or designated type of defendants based upon the special business, function performed, or type of organization, changes the general court procedure in the courts as to the particular type of defendant.

While chapter 2, tit. 52, Comp. Laws Utah 1917, is devoted entirely to fraternal insurance, section 3274 of that chapter contains the offending proviso—singles out fraternal benefit societies and grants a privilege and establishes a procedure of the courts not applicable to any other defendant. The general law and the subject-matter thereof is the service of summons and the time within which to answer or plead is fixed. The "Fraternal Benefit Societies" referred to in the chapter are by the statute referred to as corporations, societies, orders, or voluntary associations, without capital stock, organized and carried on for the mutual benefit of members, and in addition thereto a variety of forms of organization exemptions, powers, modus operandi, benefits, and regulations, relating thereto are provided.

The exception is dangerous, and once it is made the next exception and complication would probably be an exception based upon a pursuit of aims, purposes, forms, powers, and privileges of a corporation to determine whether or not the particular defendant was within or without the terms of the proviso as to service of summons and time to plead.

The anomoly of the situation is emphasized—should a situation occur—where a corporation for profit and a "Fraternal Benefit Society," or such society and a personal or other natural or corporate entity, were sued in the same

action as joint defendants. To allow one of such defendants 30 days to answer or plead, and the other only 10 days, necessitates issuing two forms of summons in the same action and presents a situation, in our opinion, which the framers of the Constitution determined should not be permitted. The provisions of the Constitution should be given the meaning such provisions had in the minds of the voters at the time the provision was adopted. *Tintic Standard Min. Co.* v. *Utah County,* 80 Utah 491, 15 P. (2d) 633. The matter of regulating by statute the business, the form or the purposes, or functions of a corporation or society is a very different thing from that of prescribing a special form of court procedure and making an exception as to such an organization or group of organizations when sued in a court of justice. We see no reasonable basis upon which defendants may be classified whereby one may have a privilege accorded to it in a court procedure, not afforded to another. Every defendant is entitled to the same privileges and the same protection of the law. The very conception of such a situation offends the fundamental principles of court action and procedure. No doubt had the same statute limited the time within which such societies were required to answer or plead to 5 days, or immediately upon service of summons, discrimination of an adverse variety would be urged, and argued as offending the same provisions of the Constitution as here under consideration.

As indicated in the main opinion, some of the authorities cited by the respective parties discuss principles of law analogous to those involved in this case, and, while we may not find the identical facts, we do find a discussion of the principles which deal with the problem presented here. The prevailing opinion concedes, and we think it may be conceded, and the authorities support the position that the issuance and service of summons is embraced within that provision of the Constitution with respect to the "practice in the courts of justice." In the case of In re *McCormick's Estate,* 72 Or. 608, 143 P. 915, 144 P. 425, at page 426, the

Oregon court, in discussing a clause in the Oregon Constitution relating to the "practice in the courts of justice," quotes:

"Bouvier defines the word 'practice' as 'the form, manner, and order of conducting and carrying on suits or prosecutions in the courts, through their various stages, according to the principles of law, and the rules laid down by the respective courts.' * * * The word 'practice' means those legal rules which direct the course of procedure to bring parties into court, and the course of the court after they are brought in. * * * 'Practice' is defined by Burrill, as 'the course of procedure in the courts, which, in a general sense, includes pleadings.' Rapalje and Lawrence define 'practice' as 'the law which regulates the formal steps in an action or other proceeding; which therefore deals with writs, summons, pleadings, affidavits, notices, motions, petitions, orders, trials, judgments, appeals, costs, and executions.' 6 Words and Phrases, First Series, page 5486, and authorities there cited."

The service of summons and particularly that provision which limits the time for answering or otherwise pleading after service clearly relates to the "practice in the courts of justice." The question here is, Does that part of section 3278, supra, now section 43-9-31, supra, offend against the provisions of article 6, § 26, subds. 6 and 18? We think it is clear that it does. And not only that, but we think it also offends against section 24 of article 1, supra.

We are also mindful of the rule that "courts do not lightly interfere with the Legislature in choosing or selecting methods of classification, yet they do not, and may not, shut their eyes to classifications that clearly and manifestly operate unequally, unjustly, and unfairly upon those who come within the same class." *Board of Education of Ogden City* v. *Hunter*, 48 Utah 373, 159 P. 1019, 1024. Classification for administrative purposes is a different thing than classifications of citizens, individuals, or corporations into privileged and restricted groups as to what must be done by them when served with judicial process.

Arguments and briefs herein on the part of respondent approach the discussion of the provisions under examination

from what may be termed the "classification point of view." Many authorities are cited wherein laws have been held to be constitutional where classification for legislative, administrative, economic, or developmental purposes are made. No case has been submitted to us, and we have found none, where a classification of parties to a proceeding at law has found support. A privilege or a burden may or may not be a denial of the equal protection of the laws, and much may depend upon whether the classification or discrimination relates to a matter upon which a proposed classification may be permissible at all, and even then whether such classification is reasonable. A classification may be permissible when, in the nature of things, under the operation of the law, it is necessary for revenue purposes, or in legislation designed to affect operation of industries and as to matters affecting health, general welfare, and prosperity of the state.

Classifications under the equal protection of the law clause of the Constitution have been sustained, based upon "differences between corporations, differences between land dependent on its use for agricultural and other purposes, differences between fire insurance and other insurance, differences in the character of work, differences between hiring persons to labor in the state and hiring persons to labor out of the state, differences between sugar refineries based entirely on whether the sugar refined was purchased or produced by the refiner, as well as various other differences." *Hill* v. *Rae*, 52 Mont. 378, 158 P. 826, 828, L. R. A. 1917A, 495, Ann. Cas. 1917E, 210, and cases cited. Classification for such purposes bears no analogy to a classification of defendants before a court of justice into those who are required to answer as provided by the general law and a particular corporation, society, or group of such corporations or societies or individuals as defendants who may have the special privilege of having three times as long to answer depending upon whether one may be engaged in selling insurance without profit or for profit, or selling good will, or matches, or carpet tacks.

Nor are we unmindful of the presumptions in favor of constitutionality. This court has held in the case of *Stillman* v. *Lynch*, 56 Utah 540, 192 P. 272, 278, 12 A. L. R. 552, that "every presumption is in favor of the constitutionality of a statute, and in case of a doubt the statute must be held to be valid." The rule is also declared in *Highland Boy Gold Min. Co.* v. *Strickley et al.*, 28 Utah 215, 78 P. 296, 1 L. R. A. (N. S.) 976, 107 Am. St. Rep. 711, 3 Ann. Cas. 1110, and cases there cited. Constitutional inhibitions laid upon the legislative power by solemn declaration of the fundamental law of the state are there for mandatory and prohibitory purposes (Const. Utah, art. 1, § 26), and presumptions of validity of a law should not be made an instrument to chisel away constitutional principles and to attack and destroy the constitutional foundations laid by the people to guard against special or private laws and privileges and for the prevention of any charge of injustice or inequality of person or party when summoned before a court of justice.

Should it be assumed that a classification of parties to a suit at law could be made at all, still a "classification, to be valid, 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'" *State* v. *Packer Corporation*, 77 Utah 500, 297 P. 1013. Likewise, classification must always rest upon some difference bearing a reasonable and just relation to the matter in respect to which the classification is proposed, neither may it always depend on scientific or marked differences in the subject-matter of the proposed classification; but it must be of practical application and not so discriminating as to be arbitrary. *Hill* v. *Rae*, 52 Mont. 378, 58 P. 826, L. R. A. 1917A, 495, Ann. Cas. 1917E, 210.

Legally all persons are equal before the law whether natural or corporate. No one is either plaintiff or defendant until by a legal procedure in a court of justice one is made either a plaintiff or a defendant. If any basis can be found upon which one defendant can be classified so as to dis-

tinguish him from another, we have failed to appreciate it. Courts of justice are not concerned with the business, purposes, or aims or want of them of corporate defendants, nor the color, creed, or character of personal defendants. All should come before the bar of justice upon the same basis of equality and without distinction as to power, class, or creed.

The language of our Constitution (article 6, § 26, subd. 18) is that, "in all cases where a general law can be applicable, no special law shall be enacted." In the case of *State* v. *Deming,* 98 Kan. 420, 158 P. 34, 36, the Supreme Court of Kansas had under consideration a clause of the Constitution of that state which contains the identical wording of the last subdivision of section 26 of article 6 of our Constitution above quoted.

While the Kansas law was attacked upon many grounds, and the particular provision as to a classification of defendants was not before that court, many of the matters that were before it provoked a discussion of principles applicable here. In the discussion the Kansas court asks some questions pertinent here. We quote:

"What reason based on classification of counties can be advanced why a plaintiff in a county governed by this act should be permitted to harass his debtor by garnishment without bond when all other citizens elsewhere in the state must give such assurance to prevent unconscionable demands? Why may a corporation in such a county have ten days to answer in garnishment and an individual have only five? Why, too, may not both corporation and individual garnishees have the time accorded to garnishees elsewhere?"

And we may add, Are corporate debtors because named "Fraternal Benefit Societies" under our statute more or less needy or the particular objects of special legislation than any other corporate debtor? Is there any sound reason why a plaintiff should be required to wait 30 days for an answer because the corporate entity happens to be a "Fraternal Benefit Society" than by that or any other name or engaged in any other business?

The Kansas court in the case of *State* v. *Deming,* supra, concludes its discussion of the conflict of the legislative enactment and the State Constitution, one of the clauses of which is identical with our own, with the following pertinent language:

"But uniformity in the administration of justice is imperative if even-handed justice is to be administered in this commonwealth. It was to check the growing mischief of special legislation that the final responsibility of determining the uniformity clause of the Constitution was taken from the Legislature and imposed upon the courts."

And further:

"No justification for this special act is shown, and none can be judicially conceived. It violates the uniformity clause of the state Constitution. *It attempts to cover subjects which not only can be governed by general laws, but which have been governed by general laws since the foundation of the state,* and is clearly at variance with the provisions of section 17 of article 2 of the state Constitution." (Italics added.)

We do not question that the Legislature could by general law create courts and prescribe the procedure therein; or that the Legislature could, as it has done, prescribe a different time within which a defendant may be required to answer in a justice's court or a city court or a district court; but to say that the Legislature may either classify defendants into groups, or permit one defendant a privilege not accorded to others in a court of justice, is a very different matter.

In the case of *People* v. *Budd,* 24 Cal. App. 176, 140 P. 714, 715, while the question under discussion was not that of length of time in which to answer after service of summons, the question did involve that of a special law where a general law was applicable and also that relating to the regulating of the practice of courts of justice. After holding that the construction of the law as contended for by the state would render it repugnant to those provisions of the Constitution prohibiting the Legislature from passing general laws "regulating the practice of courts of justice" and

the passage of a special law "where a general law can be made applicable," also had this to say:

"While it is true that it is within the constitutional power of the Legislature to confer upon the police or justice's courts the jurisdiction to try high grade, or what is commonly termed indictable, misdemeanors, in which case undoubtedly the procedure peculiar to those courts would be appropriate, * * * nowhere has it ever been held that, where jurisdiction is conferred upon the superior courts of a class of misdemeanors, the Legislature may adopt for the prosecution of such cases a procedure materially different from that prescribed by the Constitution and the statute for the prosecution of criminal cases in said courts."

In the case of *Bear Lake County* v. *Budge,* 9 Idaho, 703, 75 P. 614, 617, 108 Am. St. Rep. 179, the action was one with relation to water rights. The statute provided for the service of summons by publication. It was contended in that case that the "provision for the service of summons by publication is not uniform with the provisions of the statute of the state for service of summons in other actions." The Supreme Court of Idaho held that:

"Said provisions for the service of summons clearly violate the provisions of section 26, art. 5, of our state Constitution, which provides that all laws relating to courts shall be general and of uniform operation throughout the state, and the organized judicial powers, proceedings, and practices of all the courts of the same class or grade shall be uniform; and is in violation of the provisions of paragraph 4 of section 19 of article 3 of our Constitution, which prohibits special or local legislation regulating practice of courts of justice. We have a general law providing how a summons must be served in cases to quiet title or determine adverse interests to private property, and the provisions therefor in the act under consideration provide a different method in cases brought by a water commissioner for that purpose."

May it not be said with equal cogency that we have a statute of general application requiring all defendants to answer a summons served in a given court and in that court in a uniform time, and that such legislation as permits one defendant of the particular corporate character to enjoy a longer period, thereby delaying the operation of the courts

as to such particular defendant, falls clearly within the constitutional provision of our State Constitution prohibiting the Legislature "from enacting any private or special law. * * * Regulating the practice of courts of justice," or from enacting a special or private law "where a general law can be applicable"?

It is to be observed that the Legislature is prohibited from enacting a special law when a general law can be made applicable. The prevailing opinion fails to take into consideration the positive duty of the Legislature to pass general laws where applicable. No option is given to the Legislature to pass either a general law or a special law in its discretion if a general law can be made applicable. The presumption of validity of legislative enactments should not be permitted to weigh against the mandatory constitutional provision to pass general laws where applicable. No suggestion or argument or authority is submitted upon the question as to why the general law upon the subject is not uniform, fair, and just in its operation, and fully in accord with the constitutional provisions, nor is there any necessity, requirement, or even convenience suggested for the imposition of the provisions of this special feature in the method and manner of service of summons or the specially provided, added time within which a particular corporate defendant must be singled out, recognized, and favored.

It is argued by respondent and the prevailing opinion mentions the matter without apparently giving weight either way to the question of the right of the Legislature to provide a different time in which to perfect an appeal in forcible entry and unlawful detainer cases. Such weight as might be given to the reference weighs against the validity of the statute under consideration in the instant case.

In relation to matters of appeal, instead of such limitations and restrictions as are imposed upon the Legislature with reference to special laws regulating practice in courts of justice and special laws where a general law can be applicable, we have express authority given by the Constitution

to the Legislature so that appeals shall be from "all final judgments * * * under such regulations as may be provided by law." Const. Utah, art. 8, § 9. Even so, could it be said that a law that gave party A 30 days to appeal and party B 15 days to appeal would not offend against the provisions of the Constitution here in question?

Being of the opinion that the part of section 3287, Comp. Laws Utah 1917, attacked, now section 43-9-31, R. S. Utah 1933, is in conflict with subdivisions 6 and 18 of section 26 of article 6 of the Constitution, I cannot concur in the majority opinion of the court.

STRAUP, Chief Justice (dissenting).

I concur in the dissenting opinion of Mr. Justice MOFFAT. While as stated in both the prevailing and dissenting opinions no "hog" case has been called to our attention—an adjudicated case involving a statute and a subject-matter identical with our statute under consideration—yet, numerous cases are referred to involving principles of law applicable to the case in hand. We start with the proposition that class legislation is obnoxious and forbidden. To avoid legislative invasion, it is not enough that a class be created or designated and the act made applicable to all embraced within it. The more essential requirement is that the classification must be reasonable and natural and based on some substantial difference between the situation of such class and other individuals or associations to which it does not apply, that there must be substantial distinctions which make real differences and which inhere in the subject-matter of the legislation and bear a just relation to the act with respect to which the classification is made. That, it must be assumed, is readily conceded and runs through all the texts and cases of the subject.

Considered from such viewpoint, what then have we? The Woodmen of the World is a corporation. It is organized as a "fraternal benefit society." It has officers, managing boards, agents, etc., power to contract and to be contracted

with, among other things, to enter into contracts of life insurance with its members, levy assessments to meet and pay benefit certificates and death claims, acquire and hold property, sue and to be sued the same as a corporation organized for pecuniary profit. Thus, what inherent, natural, or substantial difference or distinction is there justifying the creation of a class of which the Woodmen of the World is included, prescribing an exclusive method of service of legal process and fixing a time for appearance, different from all other persons, corporations, and associations, and which, if not strictly complied with, renders service of process ineffectual and void? The Woodmen of the World, as alleged in the complaint filed in the city court, ever since 1891 and at the time of the filing of the complaint, was "a corporation under the laws of the State of Utah," engaged in business in Utah through agents and servants in the state in charge thereof; that the plaintiff held a policy of life insurance issued to him by the defendant, the Woodmen of the World, "and that the defendant fraudulently and wrongfully sought to levy assessments in addition to the regular monthly assessments, not to pay or meet death losses, but to induce, coerce and compel the plaintiff and others to surrender their contract of insurance and accept other and different contracts instead, which additional assessments, as alleged, the plaintiff paid under protest and sought to recover back the moneys so paid. Because the class created included fraternal, mutual, and benefit incorporated societies or organizations, I see no more reason or any inherent, natural, or substantial difference or distinction to enlarge the time in which it is required to respond to a service of legal process, than to enlarge the time to make performance, serve notice, or assert rights, not enjoyed by or granted to others not embraced within the class. In such particular, I see no distinction between a corporation organized for pecuniary profit and one for mutual benefit of its members. Each in the conduct of its business acts, and is required to act, in pursuance of its charter and within its corporate capacity, both equally

amenable to the law and with equal power to sue, to be sued, and to maintain and defend rights.

I thus think the classification unreasonable and unauthorized.